**Pierre PARKER, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. WD 53324.

Missouri Court of Appeals,
Western District.

May 20, 1997.

Rehearing Denied July 1, 1997.

David Simpson, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jacqueline K. Hamra, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and SPINDEN and SMART, JJ.

BERREY, Presiding Judge.

Appellant appeals the denial of his motion to vacate judgment and sentence pursuant to Rule 24.035.

Appellant pled guilty to murder, second degree, § 565.021.1, and armed criminal action, § 571.015.[1] He was sentenced to life on the second degree murder charge and to fifteen years on the armed criminal action charge, said sentences to run consecutively.

Appellant went to a trailer park in Warren County, Missouri. He was looking for a specific person and observed a shadow through the windows of a trailer. He fired several shots at the shadow with his .22 calibre revolver. His shots struck nine year old Jasmine Wyatt and she died from the gunshot wound.

Appellant alleges that the motion court erred in denying his Rule 24.035 motion because his counsel was ineffective, to-wit: 1) his guilty plea was involuntary; 2) failure to investigate witnesses; 3) appellant felt he had no choice except to plead guilty.

Appellant filed his pro se Rule 24.035 motion, counsel was appointed and filed an amended Rule 24.035 motion. An evidentiary hearing was held on the amended motion

and the court thereafter denied the motion. Rule 24.035.

Our review is limited to a determination of whether the trial court was clearly erroneous. Only if we are left with a clear and definite belief that a mistake was made, will we find the judgment erroneous. *Betts v. State,* 876 S.W.2d 802, 803 (Mo.App.1994). The movant bears the burden of establishing grounds for relief by a preponderance of the evidence. *Street v. State,* 765 S.W.2d 630, 631 (Mo.App.1989).

Upon a guilty plea, the effectiveness of counsel is relevant only to the degree that it affects the voluntariness of the plea. *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). To prove a claim of ineffective assistance of counsel, movant must prove that trial counsel's actions were not those of a reasonably competent attorney under similar circumstances and that, as a result, the movant was prejudiced. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). To prove prejudice, movant must show a reasonable probability, but for counsel's errors, he would not have pled guilty but would have insisted on going to trial. *Hill,* 474 U.S. at 59, 106 S.Ct. at 370.

Parker testified he pled guilty only because his attorney refused to contact certain witnesses, to-wit: Cathy Mozee, Darlene Sydnor, Kathleen Mozee and Cheryl Mozee. Parker claimed Cathy would testify she saw him inside Sydnor's home between 6:30 and 7:00 p.m. Darlene Sydnor would testify that Parker left her house around 7 p.m. and returned about 8 p.m., left again and was back around 8:30. Mrs. Sydnor told Parker's attorney of these events. Kathleen Mozee said she was at the Sydnor's between 7:00 and 7:20 p.m. and Parker was there. Cheryl Mozee saw Parker at the Sydnor's between 6:30 and 7:00 p.m. No attorney contacted Cathy Mozee.

Darlene Sydnor's evidence is a rambling discourse about weddings and receptions. She also testified her home was about six miles from the murder scene, with no stop signs or lights in between.

1. All statutory references are to Revised Statutes of Missouri, 1994, unless otherwise noted.

Kathleen Mozee, Parker's Aunt, testified at the 24.035 hearing that she was at Sydnor's fifteen to twenty minutes on the 31st, and observed Parker watching television. She was never contacted by Parker's attorney or the police.

Cheryl Mozee testified Parker was her first cousin and that she was at Sydnor's "an hour between 6:30 and 7:00 p.m." Her attempt to accurately depict the time at Sydnor's was at best confusing. She also testified she did not converse with Parker's attorney or the police.

Parker took the stand and testified he gave five statements to the authorities and had been physically threatened; he alleges he was choked several times. Parker further stated none of the statements were the same. On cross-examination, the following was elicited from Parker:

Q. Let's go on to the next page where the judge continues with Mr. Scholz's representation with you. Judge Conley says:

'If you feel like he's sold you down the river because that's sort of what you wrote in the letter to me, is that you didn't think he had your best interests at heart.'

And you said yes.

Judge Conley says:

'And I know Mr. Scholz, and I want to be sure that you don't feel that way today, that you're not entering this plea of guilty because you think he's going to sell you down the river.'

Your answer is:

'I'm entering because that's what I want to do.'

Do you remember telling Judge Conley that?

A. Yeah, I remember that.

Q. Judge Conley went over this with you very detailed about the letters that you had sent to him and about representation that Mr. Scholz had given you, hadn't he?

A. Yeah, he did.

Q. And you told him that you were satisfied with Mr. Scholz and that it was your decision and that you wanted to plead guilty and you understood that no one could make that decision for you other than yourself, isn't that correct?

A. I suppose so.

\*     \*     \*     \*     \*     \*

Q. All right. Let me go on to my next question, Mr. Parker, the bottom question comes out on page 20 the transcript. Judge Conley says:

'Are you satisfied with his representation

today?' Referring to Mr. Scholz. And you said yes.

A. Well, no, I'm not.

\*     \*     \*     \*     \*     \*

Q. I'm asking you. You're here today under oath. Why should Judge Conley believe you any more today than if you're going to tell him you lied last time?

A. Well, the reason that he should believe me is because it's not hard to see that it's true.

\*     \*     \*     \*     \*     \*

Q. Told him that Jas wasn't the one that you intended to hit, to shoot, Jas was never intended?

A. I don't remember it all. All I know is that I made it sweet.

Q. You made it sweet. In other words you lied again?

A. I was advised to.

Q. My question is did you lie again then under oath?

A. Well, I'm not, I'm not saying I lied. I said I was advised to say exactly what I've said.

Q. Okay. Well, I want to ask you point-blank then Pierre, did you lie when you spoke to Virgil Wyatt and told him you were sorry about it, you were there but Jas was not the intended person? Did you lie when you told Virgil Wyatt that?

A. Yes, I did.

Q. Okay. And you lied then when you pled guilty?

A. Yes, I did.

Q. And you knew that you were under oath; right?

A. Yep.

Q. Part of that plea agreement, let's go into part of that plea agreement because you had a lot to consider, didn't you?

A. Yep, you could say that.

\* \* \* \* \* \*

Q. And after your sentencing Judge Conley on page 35 of that transcript says:

'And I'm required once again to ask you if you're satisfied with the way in which Mr. Scholz has represented you.'

So now everything is taken care of. You know you don't have to testify any more because Anthony has pled guilty. There's nothing else going on. And Judge Conley gives you one more chance to if you want to complain about Mr. Scholz on that day, everything is taken care of. And what did you say?

'Are you satisfied?'

'Yes.'

■ The entire record refutes the claims made by Parker. The trial court entered a thorough and complete Memorandum Decision, (Findings of Fact and Conclusions of Law). The court went over the testimony of the numerous witnesses called by Parker on his motion.

■ A defendant who repeatedly assures the trial court that he is satisfied with his counsel, cannot later be heard to complain that his counsel was ineffective. *Hamilton v. State,* 865 S.W.2d 374, 375 (Mo.App.1993).

The record is clear that Parker's co-counsel thoroughly discussed the ramifications of Parker pleading guilty to second degree murder. Counsel was concerned that a jury would be quite sympathetic toward the state's case if the matter were tried as first degree since the victim was a nine year-old girl.

■ Parker's attorney, Richard Scholz, testified he did interview witnesses and deposed some of the state's witnesses. A claim of ineffective assistance of counsel that is based on counsel's failure to interview witnesses, is not "cognizable" in a Rule 24.035 hearing where the guilty plea is both counseled and voluntary. *Hagan v. State,* 836 S.W.2d 459, 464 (Mo. banc 1992).

Parker also complains that his counsel did not file a motion to suppress. However, this allegation is not specifically set forth in his point relied on. We therefore decline the opportunity to address it under plain error. Rule 30.20.

It is abundantly clear from the record that Parker received excellent representation.

Point I denied.

Affirmed.

All concur.